UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBOLHASSAN HASSANZADEH, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, DESERT VIEW FACILITY, *et al.*, <br><br> Respondents. | Case No. ED CV 25-2113-DMG (MAAx) <br><br> **ORDER RE MOTION FOR PRELIMINARY INJUNCTION** |

On August 13, 2025, Petitioner Albolhassan Hassanzadeh, a noncitizen who is incarcerated at the Desert View Facility in Adelanto, California and subject to a final order of removal, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Hassanzadeh argues, *inter alia*, that he was re-detained in violation of due process and Respondents'[1] own regulations. He seeks emergency injunctive relief including his immediate release from detention. *See* Motion for Preliminary Injunction ("MPI") [Doc.

---

[1] Respondents are the Warden, Desert View Facility; Thomas P. Giles, the Director of the Los Angeles Field Office; Todd M. Lyons, the Acting Director of U.S. Immigration and Customs Enforcement; Kristi Noem, the Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, the U.S. Attorney General.

# 6-1]. For the reasons discussed in this Order, the Court **GRANTS** the MPI and directs Respondents to immediately release Hassanzadeh from custody.

## I.
## BACKGROUND

Hassanzadeh is a native and citizen of Iran, who entered the United States on or around May 28, 2018 at the San Ysidro, California Port of Entry. Decl. of U.S. Immigrations and Customs Enforcement ("ICE") Deportation Officer Lourdes Palacios ¶ 4 [Doc. # 8-1]. He was detained upon entry and processed as an expedited removal pursuant to 8 U.S.C. § 1225(b).[2] *Id.* ¶ 5. An asylum officer determined he had a credible fear of returning to Iran, and he was placed into removal proceedings with the issuance of a Notice To Appear on July 30, 2018. *Id.* ¶ 6.

On November 13, 2018, an Immigration Judge denied Hassanzadeh's applications for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed to Iran. Board of Immigration Appeals ["BIA"] Decision [Doc. # 1 at 16]; Palacios Decl. ¶ 7. On December 7, 2018, Hassanzadeh appealed to the BIA. Palacios Decl. ¶ 8. On December 19, 2018, an immigration judge granted Hassanzadeh a bond and ICE released him from physical custody. *Id.* ¶ 9.

On July 7, 2020, the BIA dismissed Hassanzadeh's appeal. *Id.* ¶ 11. On August 5, 2020, Hassanzadeh sought review with the Ninth Circuit, which stayed removal during their review. *Id.* ¶ 12. On March 9, 2022, the Ninth Circuit denied Petitioner's petition for review of the BIA decision in part and dismissed it in part. Ninth Circuit Memorandum Decision [Doc. # 1 at 21]. The mandate issued May 2, 2022. Palacios Decl. ¶ 13.

Hassanzadeh filed a motion to reopen with the BIA on September 29, 2023. *See id.* ¶ 14. He concurrently filed a motion for a stay of removal with the BIA. *Id.*

---

[2] Hassanzadeh's Order of Supervision states that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), which applies to applicants for admission who do not possess valid entry and travel documentation. [Doc. # 6-1 at 21.] Such persons are subject to expedited removal unless they intend to apply for asylum or have a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i).

As an attachment to his MPI, Hassanzadeh filed a copy of his Order of Supervision ("OSUP") dated October 18, 2024 and signed by an ICE Field Office Director. [Doc. # 16-1 at 18–21.] The OSUP refers to a final removal order of July 7, 2020 (the date the BIA dismissed the appeal). *Id.* at 18. Hassanzadeh also provides a letter from an ICE Deportation Officer stating that as of October 18, 2024, he "has been in compliance with the [OSUP] reporting requirements and has been checking into the local office as instructed." *Id.* at 22. The letter further states that Hassanzadeh is released on an OSUP "pending an appeal on his order of removal." *Id.* Thus, it appears that at some time after July 7, 2020 and before his redetention, he was released on an OSUP.

Hassanzadeh was taken back into ICE's physical custody on July 24, 2025. *Id.* ¶ 15; *see also* Hassanzadeh Decl. ¶ 3 [Doc. # 11-2 at 2]. Hassanzadeh asserts that as of the date of his declaration, October 14, 2025, he has not been provided with any written notice or explanation regarding the reasons for revoking his release. Hassanzadeh Decl. ¶ 3. Nor was he contacted in advance to schedule an interview about the reasons for redetention, given an opportunity to respond to such reasons, or provided with an initial informal interview or revocation custody review. *Id.* ¶ 10.

A request to Iran for the issuance of travel documents for Hassanzadeh was submitted on August 13, 2025 and remains pending as of October 31, 2025. Decl. of ICE Deportation Officer Abraham Sanchez ¶ 16 [Doc. # 13-1]. ICE Deportation Officer Sanchez claims, "[t]he Iranian government is actively engaged with ICE on travel document requests and has recently issued travel documents for other similarly situated Iranian citizens for removal to Iran." *Id.* ¶ 20.

As noted, Hassanzadeh filed his habeas petition on August 13, 2025. Hassanzadeh argues that ICE remains unable to obtain travel documents for him from Iran or to identify a third country that is willing to accept him. He further asserts in his habeas petition that he is entitled to the constitutional protections set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), based on the seven-year period in which he has been in "custody" (whether physical or under ICE supervision). Petition at 9. He brings claims for violation of due process and

violation of 8 U.S.C. § 1231(a) and implementing regulations. *Id.* at 10–11. He seeks to have the Court order his immediate release upon appropriate conditions of supervision. *Id.* at 12.

On August 15, 2025, the BIA denied Hassanzadeh's motions to reopen and to stay. Sanchez Decl. ¶ 16. On September 18, 2025, Hassanzadeh filed an application for a temporary restraining order ("TRO"). He seeks to have Respondents enjoined from transferring him outside this District and removing him to a third country without written notice and a meaningful opportunity to challenge the removal and ordered to immediately release him on an OSUP. [Doc. # 6-2.]

The Court converted the TRO application to an MPI and scheduled a hearing. [Doc. # 7.] On October 3, 2025, after briefing on the MPI was completed, the Court issued an order for supplemental briefing and to continue the preliminary injunction hearing, stating as follows:

> Review of the briefing indicates that Hassanzadeh appears to challenge not only his detention as indefinite pursuant to *Zadvydas v. Davis* . . . , but also the lawfulness of his detention based on the Government's alleged failure to comply with the notice procedures in 8 C.F.R. § 241.13(i)(3) when it re-detained him. *See* MPI at 9. The Government does not address this argument in its Opposition to the MPI. *See* Opp. at 5. Neither party submits evidence enlightening the Court as to whether Hassanzadeh received the procedure set forth in the regulations for re-detention, such as notification of the reasons for revocation of release, an initial informal interview, an opportunity to respond to the reasons for revocation, or a revocation custody review. *See* 8 C.F.R. § 241.13(i)(3); *see also Delkash v. Noem*, No. ED CV 25-01675-HDV (AGR), 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (discussing similar rulings).

[Doc. # 10.]

The parties timely filed their supplemental briefs. [Doc. ## 11, 13, 14.]

In addition, Respondents assert that USCIS conducted a 90-day custody review and on October 10, 2025, issued a "Decision to Continue Detention," which informed

Hassanzadeh that USCIS had conducted a review pursuant to 8 C.F.R. § 241.4(e) and decided to maintain his custody status. [Doc. # 13-1 at 12.] The Decision notified Hassanzadeh that if he had not been released or removed after three additional months, the "ERO Removal Division" of ICE would conduct a further custody review. *Id.* at 12–13.

## II.
## DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain such relief, a petitioner must establish four elements: (1) a likelihood of success on the merits, (2) the petitioner will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) the public interest favors an injunction. *Winter*, 555 U.S. at 20.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

### B. Failure To Comply with Regulations

#### 1. Regulatory and Statutory Overview

Title 8, Section 1231 of the United States Code governs the detention and removal of noncitizens subject to final orders of removal. Section 1231 states that once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). "During the [90-day] removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A).

Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* §

1231(a)(3). This suggests that, if a noncitizen is *not* removed, he will be placed under an OSUP upon release.

Relevant here, two regulations discuss the release of noncitizens subject to a removal order: 8 C.F.R. § 241.4 ("Continued detention of inadmissible . . . aliens beyond the removal period") and 8 C.F.R. § 241.13 ("Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future"). Section 241.4 generally applies to those who are inadmissible under 8 U.S.C. § 1182, like Hassanzadeh. *See id.* § 241.4(a)(1). Subsection (l) of that regulation provides for revocation of release by a district director or Executive Associate Commissioner if one of four conditions is met: the purposes of release are served, the noncitizen violates a condition of release, it is appropriate to enforce a removal order or commence removal proceedings against a noncitizen, or the conduct of a noncitizen or any other circumstance indicates release is no longer appropriate. *Id.* § 241.4(l)(2).

Section 241.13 was added in 2001 (in light of *Zadvydas*) and applies "where the alien has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a); Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01, 56968 (Nov. 14, 2001). If there is a determination under section 241.13 that there is no such significant likelihood, section 241.13(b)(1) allows for the release of the noncitizen under an OSUP if he is not a danger to the public or a risk of flight. If there are changed circumstances such that a significant likelihood of removal materializes, section 241.13 explicitly provides for revocation and sets forth procedures, including an initial informal interview promptly after the return to custody and a revocation custody review. *Id.* § 241.13(i)(2)–(3). Assuming the noncitizen is not released after these procedures, section 241.4 then governs. *Id.* § 241.13(i)(2).

2. **Application to Hassanzadeh**

In this case, it appears Hassanzadeh was released pursuant to 8 C.F.R. § 241.4, as his OSUP references his "July 7, 2020" final order of removal and the ICE Deportation

-6-

Officer's letter from the same date states that he "is currently reporting on [an OSUP] *pending an appeal on his notice of removal*."[3] MPI at 18, 22 (emphasis added).

Hassanzadeh's redetention was apparently due to a determination that there was a reasonable likelihood of enforcing the removal order. *See* Palacios Decl. ¶ 14; Sanchez Decl. ¶ 17. Although there is some conflict[4] between Officer Palacios' and Officer Sanchez's declarations, they both assert that the redetention was for this reason.[5]

Section 241.4 requires that Hassanzadeh be provided an initial meaningful opportunity to contest the revocation of his OSUP through an informal interview. Respondents argue that an initial informal interview is required only if the revocation is due to a violation of conditions of supervised release, citing section 241.4(l)(1). The Court agrees with multiple district courts around the country that have rejected this argument. *See, e.g.*, *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025) (cataloguing cases). As noted above, there are four distinct grounds for the revocation of an OSUP in Section 241.4(l)(2) (including violation of a condition of release). The subsection immediately following, discussing the timing of review, sets forth the following procedure for revocations under all these grounds: an informal interview as provided for in subsection (l)(1) and then the "normal review process." 8 C.F.R. § 241.4(l)(3). That is, subsection (3) clarifies that the informal interview applies to all four

---

[3] Confusingly, even though Hassanzadeh includes his 2024-dated OSUP and Officer Palacios states he was released on an OSUP on December 19, 2018 (Palacios Decl. ¶ 10), Officer Sanchez states Hassanzadeh was released pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (2015), *reversed by Jennings v. Rodriguez*, 583 U.S. 281 (2018), and "not . . . on an [OSUP.]" Sanchez Decl. ¶¶ 11–12. At the hearing on the MPI, Respondents' counsel was not able to provide a satisfactory explanation for this discrepancy.

[4] Officer Palacios states that the redetention was pursuant to 8 C.F.R. § 241.1 and 8 U.S.C. § 1231, whereas Officer Sanchez cites 8 C.F.R. § 241.4(l)(2). Palacios Decl. ¶ 15; Sanchez Decl. ¶ 17.

[5] Respondents' counsel was again unable to give a satisfactory explanation of why Respondents came to the conclusion that Hassanzadeh would be detained based on a reasonable likelihood of his removal on July 24, 2025 *before* the request to Iran for travel documents was issued on August 13, 2025. Other than a vague assertion that the Iranian government had "recently" issued travel documents to other "similarly situated" Iranian citizens for removal to Iran, there is no indication in the record as to the status of Hassanzadeh's Iranian travel documents. Sanchez Decl. ¶ 20.

1  enumerated grounds for revocation.  The Court agrees with those courts that have
2  concluded "it does not make sense for (l)(2) and (l)(1) to provide two entirely different
3  tracks for revocation."  *K.E.O.*, 2025 WL 2553394, at *5 (citation and quotation marks
4  omitted).

5  Respondents argue that "it makes sense that if a person's release is being revoked
6  because of a violation of a condition of their release, that person should receive notice of
7  what the alleged violation is so that they have an opportunity to respond."  The Court
8  agrees.  It also makes sense that if a person's release is revoked for the other reasons in
9  (l)(2), he or she should receive such notice as well.  And it would make little sense for
10 Respondents to be able to avoid following the procedures set forth in section 241.13(i)—a
11 regulation codifying the rule that a person whose release is revoked to enforce a removal
12 order must receive an initial informal interview and other process—by saying that the
13 revocation is due to it being "appropriate to enforce a removal order" against Hassanzadeh
14 under section 241.4(l)(2)(iii).  In short, Hassanzadeh was entitled to the process set forth
15 in section 241.13(l) when he was redetained.  It is undisputed that he was not afforded this
16 process.

17 Respondents alternatively argue that Hassanzadeh has now received a 90-day Post
18 Order Custody Review ("POCR"), which is adequate process.  Sanchez Decl. ¶ 19; *see
19 also* Doc. # 13-1 at 14 (October 22, 2025 decision letter).  Thus, Respondents claim that
20 he is "being provided with procedural safeguards in connection with his re-detention."
21 Gov't Supp. Br. at 3.

22 The POCR process is *in addition to* the initial informal interview, which must be
23 provided "promptly" after redetention.  *See* 8 C.F.R. § 241.13(i)(3); *see also* 8 C.F.R. §
24 241.4(l)(3).  The POCR consists of a notification of a records review, an interview, a final
25 evaluation of any contested facts relevant to the revocation, and a determination whether
26 the facts as determined warrant revocation and further denial of release.  8 C.F.R. §
27 241.4(l)(3).  The decision letter for Hassanzadeh's POCR, dated October 22, 2025,
28 indicates that the deciding factor against his release was that Hassanzadeh did not

demonstrate he was not a flight risk and that ICE considered the factors set forth in 8 C.F.R. § 241.4(e). Gov't Supp. Br. at 12.

At an initial informal interview, by regulation (*see* 8 C.F.R. § 241.13(i)(3)), Hassanzadeh would be given an opportunity to respond to the reasons for his revocation and entitled to submit any evidence or information that he believes shows there is no significant likelihood of his removal in the reasonably foreseeable future. There is no indication that ICE notified Hassanzadeh of the reason for his redetention or allowed him to submit any such information or otherwise to challenge ICE's claim he can be removed. Indeed, the POCR decision letter appears to rely on a *lack* of evidence provided by Hassanzadeh. *See* Doc. # 13-1 at 12 ("you have not demonstrated that, if released, you would not be a flight risk").

The procedures required by the regulations are not a mere formality. Respondents were unable to explain basic details relating to Hassanzadeh's redetention either in their papers or at the hearing, including why Hassanzadeh was detained and why the decision letter claimed he was a "flight risk." Had Hassanzadeh been provided with the process he is entitled to under the regulations, there would be a record of the reason for the revocation, and the Court, Hassanzadeh, and Respondents' own counsel would not be left to speculate as to the factual underpinnings for Respondents' rationale. Due process and the rule of law require more than a "detain now, figure it out later" approach.

In short, Hassanzadeh has shown a strong likelihood of success on the merits of his claim that ICE failed to follow its own regulations when it redetained him, notwithstanding their provision of the decision letter a full three months after his unlawful detention. Like other courts to consider this issue, the Court finds that the unlawful detention justifies release.[6] *See, e.g., McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-

---

[6] Because the Court grants the MPI on this basis, the Court need not address Hassanzadeh's alternative argument that his prolonged detention violates due process as set forth in *Zadvydas*.

Hassanzadeh also asserts that Respondents may intend to remove him to a third country without appropriate procedures for him to argue that he is at risk in such a country, based on Respondent Noem's

RBM-DEB, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025); *see also K.E.O.*, 2025 WL 2553394, at *7 ("[C]ourts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations").

### C. Irreparable Harm

The Court concludes that ICE's failure to follow its own regulations resulted in irreparable harm. Government agencies are required to follow their own regulations. *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (citation and quotation marks omitted).

"Both § 241.4 and § 241.13 were intended to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *McSweeney*, 2025 WL 2998376, at *7 (internal citation and quotation marks omitted). ICE deprived Hassanzadeh of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm").

### D. Public Interest and Balance of the Equities

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotation marks omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences,

---

memorandum about third country removals. *See* MPI at 9. Hassanzadeh has not come forward with evidence that Respondents intend to remove him to a third country, particularly in light of ICE's request for travel documents from the Iranian government. Sanchez Decl. ¶ 20. Accordingly, Hassanzadeh does not demonstrate that relief related to the potential of removal to a third country is appropriate.

the public interest will be relevant to whether the district court grants the preliminary injunction." *Hernandez*, 872 F.3d at 996. The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA). Moreover, the public has a strong interest in upholding procedural protections against unlawful detention.

The harm to Respondents here is minimal. Nothing prevents the Government from redetaining Hassanzadeh if the Government satisfies the procedural requirements and shows that detention is warranted.[7] Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

### E. Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

---

[7] The Court notes that the notice of continued detention claims Hassanzadeh is a flight risk without identifying any changed circumstance or new evidence since he was released on an OSUP approximately one year ago.

## III.
## CONCLUSION

The MPI is **GRANTED**, and Respondents shall immediately release Hassanzadeh from custody, subject to the conditions of his prior OSUP. Respondents shall not transfer Hassanzadeh out of this District during the pendency of these habeas proceedings. The parties shall file a status report in response to this Order within 10 days, including addressing whether the habeas petition is moot once Hassanzadeh's release is effectuated.

**IT IS SO ORDERED.**

DATED: November 25, 2025

_____
DOLLY M. GEE
CHIEF U.S. DISTRICT JUDGE